# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

　　　　　　　Respondent,

　　v.

CESAR RAMOS-AVILA,

　　　　　　　Appellant.

No. 72452-5-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: January 19, 2016

LEACH, J. — Cesar Ramos-Avila appeals his conviction for one count of arson in the first degree. He contends that the trial court should have instructed the jury on arson in the second degree because he set fire to a portion of the Wintergreen Place apartment building and the fire did not reach the inside of any apartments. Because the record does not contain sufficient facts for a jury to convict Ramos-Avila of an inferior degree or lesser included offense and acquit him of the charged offense, the trial court did not err. We affirm.

## Background

On May 18, 2014, Cesar Ramos-Avila set a fire at the Wintergreen Place apartments in Des Moines, Washington. Wintergreen Place is a two-story complex with access to each apartment provided by unsecured central interior stairways. The upper units have exterior balconies. Desiree Sanchez lived at Wintergreen Place with several family members. On May 18, Sanchez saw sparks and smoke coming under the front entry door of her apartment.

Sanchez's father, Pablo Ramirez, opened the door to find fire and smoke blocking an escape. He saw flames on the door and the carpet. Residents of other units in the complex fled to their balconies, and some leaped off. Firefighters hoisted a ladder to aid in the rescue. Shortly before the fire, two witnesses, Maricela De La Cruz and Maria De La Cruz, saw Cesar Ramos-Avila walk past their front window and go upstairs with a gas can. Once the fire started, Maricela saw Ramos-Avila running from the fire, carrying what appeared to be the same gasoline container.

Ramirez testified that the day before the fire, he and Ramos-Avila got into a physical altercation in a store parking lot. After the incident with Ramos-Avila, Ramirez realized that he was missing his wallet. Ramirez's wallet contained identification cards showing his home address.

King County Sheriff's Office Fire Investigator Charles Andrews testified that the fire warped the unit's metal front door, which allowed flame and smoke to enter the apartment. Andrews also testified that the whole apartment would have burned had the fire burned an additional 10 minutes because "the fire was already lapping under the door and around the door to get into the apartment" and had nearly reached a large amount of combustible material in the home. Photographs showed fire and smoke damage from both inside and outside Ramirez's unit and also smoke damage inside the unit across the stairwell, where another family lived.

A forensic scientist for the Washington State Patrol Crime Laboratory testified about traces of gasoline found on fire debris from the doorway, a burned doormat, carpet under a doormat, and Ramos-Avila's shoes. Ramos-Avila testified that he did not start the fire, had no idea where the apartment building was, did not go to Wintergreen Place that day, and had no gasoline that day.

Ramos-Avila requested jury instructions for an inferior degree offense, arson in the second degree, and a lesser included offense, reckless burning in the first degree. Ramos-Avila argued that because the fire did not occur in a living area, the jury could ultimately decide that it was not part of a dwelling, entitling him to an inferior degree offense jury instruction.

The State objected and asserted that the record included no evidence that would permit an inference that the fire occurred in a building that was not a dwelling. The trial court concluded that the evidence included no set of facts that permitted a jury to conclude that Ramos-Avila committed arson in the second degree and did not commit arson in the first degree. The jury found Ramos-Avila guilty of arson in the first degree. Ramos-Avila appeals.

Analysis

Ramos-Avila contends that the trial court should have instructed the jury on the inferior degree offense of arson in the second degree because a jury could have concluded that he set fire to a building that was not a dwelling. We disagree.

-3-

The trial court made a factual determination when it concluded that the evidence did not support Ramos-Avila's request for an inferior degree or lesser included offense instruction. When a trial court bases its decision to include or omit a jury instruction on a factual determination, we review for abuse of discretion.[1] To determine if the record includes sufficient evidence to support the giving of an instruction, we review the evidence supporting a proposed jury instruction in the light most favorable to the party that requested the instruction.[2]

A person is guilty of arson in the first degree if he knowingly and maliciously causes a fire or explosion which damages a dwelling.[3] A "dwelling" includes "any building or structure, though movable or temporary, or a portion thereof, which is used or ordinarily used by a person for lodging."[4]

A person is guilty of arson in the second degree if he knowingly and maliciously causes a fire or explosion which damages a building.[5] A "building" includes a "dwelling, fenced area, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale, or deposit of goods."[6]

When the State charges a defendant with an offense consisting of different degrees, the jury may find the defendant guilty of any inferior degree, or

---

[1] State v. Condon, 182 Wn.2d 307, 315-16, 343 P.3d 357 (2015).
[2] State v. Fernandez-Medina, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000).
[3] RCW 9A.48.020(1)(b).
[4] RCW 9A.04.110(7).
[5] RCW 9A.48.030(1).
[6] RCW 9A.04.110(5).

of an attempt to commit the offense, and not guilty of the charged offense.[7] In all other cases, the defendant "may be found guilty of an offense the commission of which is necessarily included within that with which he or she is charged."[8]

A trial court should give a proposed jury instruction on a lesser included or inferior degree offense if the evidence would "'permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater.'"[9]

The proposing party must satisfy both a legal and factual requirement.[10] To satisfy the legal requirement, the proponent must show that the proposed instruction describes an offense that is an inferior degree of the charged offense.[11] For a lesser included offense, the proponent must show that the proposed instruction describes an offense where each element of that lesser offense is included in the charged offense.[12] To satisfy the factual requirement, the proponent must show that, when viewing the evidence in the light most favorable to the proposing party, the jury could find that the proponent is guilty of the lesser offense and not guilty of the charged offense.[13] The evidence must

---

[7] RCW 10.61.003, .010.
[8] RCW 10.61.006.
[9] Fernandez-Medina, 141 Wn.2d at 456 (quoting State v. Warden, 133 Wn.2d 559, 563, 947 P.2d 708 (1997)).
[10] State v. McDonald, 123 Wn. App. 85, 88, 96 P.3d 468 (2004); State v. Tamalini, 134 Wn.2d 725, 728-29, 732, 953 P.2d 450 (1998).
[11] McDonald, 123 Wn. App. at 88-89; Tamalini, 134 Wn.2d at 732; State v. Foster, 91 Wn.2d 466, 472, 589 P.2d 789 (1979).
[12] McDonald, 123 Wn. App. at 89; Tamalini, 134 Wn.2d at 728-29; State v. Berlin, 133 Wn.2d 541, 545-46, 947 P.2d 700 (1997); State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).
[13] McDonald, 123 Wn. App. at 89; Fernandez-Medina, 141 Wn.2d at 455-56; Tamalini, 134 Wn.2d at 729, 732; State v. Ieremia, 78 Wn. App. 746, 755,

"affirmatively establish the defendant's theory of the case—it is not enough that the jury might disbelieve the evidence pointing to guilt."[14]

This case involves only the factual requirement. Ramos-Avila contends that he satisfied this requirement. He asserts that the record shows that he set fire to a portion of Wintergreen Place where people do not ordinarily lodge. Thus, he did not set fire to a dwelling. But neither Washington case law nor the applicable statute supports his argument.

Washington courts have consistently held that where a building is used for lodging at the time of the offense, any portion of that building is a "dwelling" under RCW 9A.04.110(7).[15]

In State v. Neal,[16] this court held that a toolroom in a residential apartment building was a dwelling. In that case, an apartment building maintenance worker saw Neal inside the toolroom putting tools into several bags.[17] A jury convicted Neal of residential burglary.[18] Though a toolroom in an apartment building is not ordinarily used for lodging, the court reasoned that because Neal entered a building used for lodging, sufficient evidence existed for a jury to find that Neal entered a dwelling and convict him of residential burglary.[19]

---

899 P.2d 16 (1995) (evidence must support inference that defendant committed the lesser offense "instead of" the charged offense).

[14] Fernandez-Medina, 141 Wn.2d at 456.

[15] State v. Neal, 161 Wn. App. 111, 114, 249 P.3d 211 (2011); State v. Murbach, 68 Wn. App. 509, 513, 843 P.2d 551 (1993).

[16] 161 Wn. App. 111, 114, 249 P.3d 211 (2011)

[17] Neal, 161 Wn. App. at 112.

[18] Neal, 161 Wn. App. at 113.

[19] Neal, 161 Wn. App. at 114.

Similarly in State v. Murbach,[20] Division Three of this court held that the definition of "dwelling" included an attached garage. In that case, Murbach entered a garage attached to the victims' home and scratched a car.[21] The court reasoned that the attached garage was part of the dwelling because it was a portion of a building used as lodging.[22]

In State v. McDonald,[23] Division Two of this court held that the evidence in that case raised a jury question about whether a house was a dwelling within the meaning of RCW 9A.04.110(7) because the homeowners had not been using it for lodging around the time of the burglary. The court reasoned that the jury could have convicted McDonald of second degree burglary and not residential burglary because, when viewing the evidence in the light most favorable to McDonald, the jury could have found that the Gig Harbor house was not a dwelling within the meaning of the statute when McDonald burglarized it.[24]

Unlike McDonald, where the homeowners were renovating their home, here no evidence shows renovation or construction at Wintergreen Place when Ramos-Avila set fire to it. In McDonald, the home was uninhabited. Here undisputed evidence shows that people lived at Wintergreen Place when Ramos-Avila set the fire.

---

[20] 68 Wn. App. 509, 513, 843 P.2d 551 (1993).
[21] Murbach, 68 Wn. App. at 510.
[22] Murbach, 68 Wn. App. at 513.
[23] 123 Wn. App. 85, 91, 96 P.3d 468 (2004).
[24] McDonald, 123 Wn. App. at 90-91.

Here, even viewing the evidence in a light most favorable to Ramos-Avila, Wintergreen Place is a building used for lodging, and residents used an interior portion of that building as a dwelling. Though Ramos-Avila contends that a jury could have reasonably concluded that "persons do not ordinarily 'lodge' in the stairwell of the building," Washington case law and RCW 9A.04.110(7) refute his position.

Viewing the record in the light most favorable to Ramos-Avila, even though the fire did not contact the inside part of the apartment unit, the exterior door to the interior hallway or stairway is still part of a dwelling because it is a part or portion of a building used for lodging. The trial court did not abuse its discretion when it refused to instruct the jury on arson in the second degree because a jury could not have reasonably concluded that he committed only this lesser offense.

Ramos-Avila next contends that the trial court erred when it used the improper test to refuse an inferior degree or lesser included offense jury instruction. However, even if the trial court did err in its analysis, the error was harmless and does not warrant reversal because it did not materially affect the verdict.

The test for determining if a party is entitled to an instruction on an inferior degree offense differs from the test for a lesser included offense instruction only with respect to the legal component of the test.[25] A trial court must give a lesser

---

[25] Fernandez-Medina, 141 Wn.2d at 455.

included offense instruction where (1) each element of the lesser offense is a necessary element of the greater offense charged and (2) the evidence in the case supports an inference that the defendant committed only the lesser crime.[26] An inferior degree offense instruction is appropriate when

> "(1) the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense'; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense."[27]

Ramos-Avila does not claim constitutional error. A nonconstitutional error is harmless if it did not, within reasonable probability, materially affect the verdict.[28]

Ramos-Avila does not contend that the instructions were misleading, could not be readily understood by the jury, or did not permit him to argue his theory of the case.[29] Instead, Ramos-Avila asserts that the trial court relied on a mistaken analysis to reach its ruling.

Ramos-Avila asserts that the trial court improperly used the lesser included offense analysis to reject his request for an inferior degree instruction. However both instructions require the same factual inquiry: the evidence "must raise an inference that <u>only</u> the lesser included/inferior degree offense was

---

[26] <u>State v. Meneses</u>, 169 Wn.2d 586, 595, 238 P.3d 495 (2010).

[27] <u>Fernandez-Medina</u>, 141 Wn.2d at 454 (quoting <u>State v. Peterson</u>, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)).

[28] <u>State v. Zwicker</u>, 105 Wn.2d 228, 243, 713 P.2d 1101 (1986).

[29] <u>State v. Hutchinson</u>, 135 Wn.2d 863, 885, 959 P.2d 1061 (1998); <u>Petersen v. State</u>, 100 Wn.2d 421, 440, 671 P.2d 230 (1983); <u>State v. Dana</u>, 73 Wn.2d 533, 537, 439 P.2d 403 (1968).

committed to the exclusion of the charged offense."[30]   Here, the trial court resolved the matter on the factual prong, stating, "I don't see that there have been facts presented where they could conclude that a lesser included crime, indeed, was committed."

The record does not contain affirmative evidence supporting Ramos-Avila's contention that he committed arson in the second degree but did not commit arson in the first degree.   The record includes overwhelming evidence that the interior hallway or stairway of Wintergreen Place constituted a dwelling and Ramos-Avila maliciously and knowingly set fire to it.  Even if the trial court did err in its legal analysis, it reached the correct conclusion and properly instructed the jury.  Any analysis error was harmless because it did not materially affect the jury's verdict.

## Conclusion

The trial court did not abuse its discretion when it rejected Ramos-Avila's request for a jury instruction for arson in the second degree because a jury could not have reasonably concluded that he committed only the lesser offense.  Any

---

[30] Fernandez-Medina, 141 Wn.2d at 455.

-10-

error in the trial court's legal analysis was harmless because it did not materially affect the jury's verdict. We affirm.

_Leach, J._

WE CONCUR:

_Appelwick_                    _Cox, J._