# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON, )
                                         ) No. 76891-3-I
                   Respondent, )
                                          ) DIVISION ONE
       v.                                     )
                                          ) UNPUBLISHED OPINION
                                          )
RESHAUD TODD BROWN,           )
                                          )
                   Appellant. ) FILED: October 15, 2018
                                          )

CHUN, J. — The State charged Reshaud Brown with multiple crimes, including assault in the second degree. During trial, Brown requested a jury instruction on assault in the third degree. The trial court denied the request but issued a jury instruction on assault in the fourth degree in addition to second degree assault by strangulation. A jury convicted Brown of assault in the second degree. He appeals the trial court's refusal to issue a jury instruction on assault in the third degree. He also contends his mandatory life sentence under the Persistent Offender Accountability Act (POAA) violates the Eighth Amendment of the United States Constitution and article I, section 14 of the Washington Constitution as cruel and unusual punishment because of his mental and emotional deficits. Finding no error, we affirm.

I.

## BACKGROUND

On September 21, 2015, the Kent Police Department (KPD) responded to a call about sounds of a domestic struggle in one of the rooms of a Howard Johnson motel. Throughout the night before, a couple in the neighboring unit heard loud noises, crying, and a female voice saying "No, no." The couple reported the noises to the hotel clerk who called the police.

When they arrived, KPD officers heard a male voice followed by a frantic female voice saying, "He's killing me. Help me." KPD had obtained a key but kicked the door open because the woman continued to scream for help. Upon entering the hotel room, KPD found Brown standing just inside the door with his girlfriend, Natalie Gumtow, seated in a chair to the right.

KPD officers found Gumtow "extremely frantic." KPD detained Brown and took a statement from Gumtow. KPD observed marks on Gumtow's neck and minor scrapes on her arm, legs, and face. Gumtow told KPD Brown had strangled her with the cord of a Roto Hammer,[1] which they found between the bed and bathroom of the motel room. Gumtow also reported Brown had told her the tool was a nail gun and threatened to shoot her with it.

An EMT at the scene evaluated Gumtow and noted red marks on her neck and leg. Gumtow told the EMT she had been hit and choked. After transfer to the emergency room, the evaluating physician noted, "[t]he patient states that

---

[1] A Roto Hammer is a tool for drilling concrete.

she was in a hotel with her boyfriend and he choked her with his hands, and also wrapped a cord around her neck and was strangling her."

KPD arrested Brown and took him into custody. The State charged Brown with assault in the second degree by strangulation and felony harassment, both with domestic violence allegations.[2]

At trial, Gumtow told a very different version of the events: She testified she left the hotel to visit her ex-pimp, Mikey, at his apartment to obtain methamphetamines. Gumtow and Mikey smoked together and Mikey became upset and began beating her. He wrapped a cord around her neck. Gumtow thought she blacked out for a few seconds. She eventually left Mikey's apartment and returned to the Howard Johnson motel. When Gumtow arrived back at the motel, she told Brown about the incident with Mikey. Brown became angry and told Gumtow he would leave her for someone else. Gumtow and Brown argued. Gumtow became upset and began throwing things, including Brown's shoes.

Throughout this testimony, the State confronted Gumtow with her prior statements to police that Brown choked her at least four times that night and threatened to shoot her with a nail gun, chop her up, or stab her. Gumtow admitted she told the police Brown assaulted her, but denied any memory of Brown choking her. She also denied Brown threatened her. She testified Brown never "put hands" on her. According to Gumtow, she told the police Brown

---

[2] The State amended the information several times to include a charge of tampering with a witness, and multiple charges of domestic violence felony violation of a court order. None of these additional charges are at issue on appeal.

choked her because she was upset and did not want Brown to leave her. Gumtow denied any wrongdoing by Brown.

Toward the end of trial, Brown requested an instruction for third degree assault. Brown raised the issue as a request for a lesser included offense instruction. The trial court refused to give the instruction for third degree assault as a lesser included offense because second and third degree assault required different elements. Instead the trial court issued a jury instruction on fourth degree assault as a lesser degree offense:

> The defendant is charged in Count 1 with assault in the second degree. If, after full and careful deliberation on this charge, you are not satisfied beyond a reasonable doubt that the defendant is guilty, then you will consider whether the defendant is guilty of the lesser crime of assault in the fourth degree.
>
> When a crime has been proved against a person, and there exists a reasonable doubt as to which of two or more degrees that person is guilty, he or she shall be convicted only of the lowest degree crime.

The jury convicted Brown of second degree assault, harassment, tampering with a witness, and seven counts of violation of a court order. The jury also found the existence of a domestic relationship between Brown and Gumtow at the time of commission of all crimes.

Due to prior offenses of first degree burglary and first degree robbery, Brown's second degree assault conviction constituted his third "most serious offense" under the POAA. Brown requested the trial court exercise discretion at sentencing and not impose the life sentence required by the POAA. The trial

4

court did not believe it had discretion to deviate from the POAA in this case and sentenced Brown to life without the possibility of early relief.

Brown appeals.

## II.
## ANALYSIS

A.     Inferior Degree Offense Instruction

Brown claims the jury should have received an inferior degree offense instruction for assault in the third degree. The State argues the trial court properly refused the instruction because the evidence did not show Brown negligently assaulted Gumtow. We agree the evidence failed to establish only third degree assault and conclude the trial court properly denied the third degree assault instruction.

"Generally, a criminal defendant may only be convicted of crimes charged in the State's information." State v. Corey, 181 Wn. App. 272, 275, 325 P.3d 250 (2014). But, a jury may find a defendant guilty of a crime that is an inferior degree to the crime charged. RCW 10.61.003; State v. Fernandez-Medina, 141 Wn.2d 448, 453, 6 P.3d 1150 (2000). A trial court may instruct the jury on an inferior degree offense only when:

> (1) the statutes for both the charged offense and the proposed
> inferior degree offense 'proscribe but one offense'; (2) the
> information charges an offense that is divided into degrees, and the
> proposed offense is an inferior degree of the charged offense; and
> (3) there is evidence that the defendant committed only the inferior
> offense.

Fernandez-Medina, 141 Wn. 2d at 454 (quoting State v. Peterson, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)).

Based on Brown's request, the trial court considered whether to give a third degree assault jury instruction as a lesser included offense rather than an inferior degree offense. The legal standard for entitlement to a lesser included offense differs from that of an inferior degree offense. Fernandez-Medina, 141 Wn.2d at 454. But in this case, any confusion means little because the parties do not dispute the legal component of the test for entitlement to an inferior degree offense instruction. See Fernandez-Medina, 141 Wn.2d at 454-55. On appeal, the parties only dispute the factual element of the test.

Whether to instruct a jury on an inferior degree offense requires the application of law to facts and is reviewed de novo. Corey, 181 Wn. App. at 276. We view the supporting evidence in the light most favorable to the party who requested the instruction. Fernandez-Medina, 141 Wn.2d at 455-56. The supporting evidence must affirmatively establish the defendant's theory of the case. Fernandez-Medina, 141 Wn.2d at 456.

A defendant must make a "more particularized" factual showing for an inferior degree offense instruction than for other jury instructions. Fernandez-Medina, 141 Wn.2d at 455. The evidence must raise an inference that *only* the inferior degree offense was committed. Fernandez-Medina, 141 Wn.2d at 455. "[W]hen substantial evidence in the record supports a rational inference that the defendant committed only the lesser included or inferior degree offense to the exclusion of the greater offense, the factual component of the test for entitlement to an inferior degree offense instruction is satisfied." Fernandez-Medina, 141 Wn.2d at 461. The inference does not arise merely because the jury does not

believe the State's evidence. State v. McClam, 69 Wn. App. 885, 888, 850 P.2d 1377 (1993) (citing State v. Speece, 115 Wn.2d 360, 362, 798 P.2d 294 (1990)). "[S]ome evidence must be presented which affirmatively establishes the defendant's theory." State v. Fowler, 114 Wn.2d 59, 67-68, 785 P.2d 808 (1990), overruled on other grounds by State v. Blair, 117 Wn.2d 479, 816 P.2d 718 (1991).

The State argued Brown committed assault in the second degree by strangulation. A defendant is guilty of this category of assault in the second degree if, "under circumstances not amounting to assault in the first degree," he or she "assaults another by strangulation or suffocation." RCW 9A.36.021(1)(g). Brown requested an instruction for assault in the third degree with substantial pain. Under the proposed instruction, a person commits assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree, "with criminal negligence, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering." RCW 9A.36.031(1)(f). To be entitled to an inferior degree offense instruction on this type of third degree assault, the evidence must affirmatively establish Brown did not strangle Gumtow but caused her bodily harm resulting in substantial pain.

In this case, the State provided evidence from witnesses who testified Gumtow reported Brown had strangled her. On direct examination, Gumtow denied Brown had strangled her, attributing the strangulation to Mikey instead. The State repeatedly countered Gumtow's testimony with reference to her prior

statements that Brown strangled her, but Gumtow continued to deny the events and claimed she made the statements because Brown upset her when he threatened to leave her.

If believed by the jury, this testimony created the inference that Brown did not commit assault in the second degree by strangulation. In fact, based on Gumtow's testimony, Mikey caused Gumtow's injuries and Brown did not "put hands" on her. Rather than establish Brown inflicted bodily harm and substantial pain as required for third degree assault, this affirmative evidence suggests Brown never assaulted Gumtow. Therefore, the evidence does not show Brown committed only the inferior degree offense of third degree assault to the exclusion of the greater offense of second degree assault.

The conclusion Brown committed third degree assault required the jury to selectively disbelieve parts of Gumtow's prior statements and her testimony. Disbelief of evidence of guilt does not satisfy the factual element of the test for an inferior degree instruction. Fernandez-Medina, 141 Wn.2d at 456. Brown was not entitled to an instruction for third degree assault.[3]

B.    Ineffective Assistance of Counsel

Brown argues his trial counsel was ineffective for proposing and arguing the legal standard for a lesser included offense instruction rather than an inferior

---

[3] The State argues third degree assault is inapplicable due to the required element of "criminal negligence." According to the State, the evidence shows the strangulation was intentional. Brown correctly argues the issue of criminal negligence is immaterial in this case. Under RCW 9A.08.010(2), "[w]hen a statute provides that criminal negligence suffices to establish an element of an offense, such element also is established if a person acts intentionally, knowingly, or recklessly." Therefore, evidence Brown intentionally strangled Gumtow satisfies the criminal negligence component.

degree offense instruction. Brown acknowledges Washington Supreme Court precedent forecloses this result, but raises the claim to preserve the issue for future review. In keeping with the binding case law, we conclude counsel was not ineffective.

The Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution guarantees effective assistance of counsel. State v. Hendrickson, 129 Wn.2d 61, 77, 917 P.2d 563 (1996). To prevail on a claim of ineffective assistance of trial counsel, a defendant must prove both deficient performance and prejudice. State v. Jones, 183 Wn.2d 327, 339, 352 P.3d 776 (2015).

Establishing deficient performance requires a showing that counsel's representation fell below an objective standard of reasonableness based on consideration of all the circumstances. State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). "[S]crutiny of counsel's performance is highly deferential and courts will indulge in a strong presumption of reasonableness." Thomas, 109 Wn.2d at 226. The defendant bears the burden of establishing deficient performance. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

Prejudice sufficient to support a claim of ineffective assistance of counsel occurs when counsel's errors were so serious as to deprive the defendant of a fair trial. Hendrickson, 129 Wn.2d at 78. The defendant must demonstrate a "reasonable probability that, but for counsel's errors, the result of the trial would have been different." Hendrickson, 129 Wn.2d at 78.

A claim of ineffective assistance of counsel is a mixed question of law and fact that an appellate court reviews de novo. Jones, 183 Wn.2d at 338-39.

Counsel's failure to request a lesser offense instruction does not establish prejudice, as required for ineffective assistance of counsel, where a jury has convicted the defendant of the higher offense. Grier, 171 Wn.2d at 43-44; In re Personal Restraint of Crace, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012). Because courts presume a jury acts according to the law, courts must assume the jury would not have convicted the defendant of the higher degree offense unless the State had met its burden of proof. Grier, 171 Wn.2d at 43-44; Crace, 174 Wn.2d at 847.

Here, the jury convicted Brown of second degree assault by strangulation. Without evidence to the contrary, the presumption holds the jury arrived at this verdict because the State proved beyond a reasonable doubt that Brown committed assault by strangulation. As a result, the availability of a compromise verdict would not have changed the outcome of the trial. Grier, 171 Wn.2d at 44; Crace, 174 Wn.2d at 847. Brown, therefore, cannot demonstrate prejudice from trial counsel's failure to properly request an inferior degree offense instruction.

C.    Mandatory Life Sentence Under the POAA

Brown contends his mandatory life sentence under the POAA constitutes cruel and unusual punishment and the trial court erred by failing to exercise its discretion to impose a lower punishment. Brown premises this claim on his "characteristics of youth" due to his mental and intellectual deficits. The State argues the trial court had no discretion in sentencing an adult under the POAA

and a mandatory life sentence under the POAA has properly withstood constitutional challenges. We agree.

We review alleged constitutional violations de novo. State v. Siers, 174 Wn.2d 269, 273-74, 274 P.3d 358 (2012).

Under the POAA, "[n]otwithstanding the statutory maximum sentence or any other provision of this chapter, a persistent offender shall be sentenced to a term of total confinement for life without the possibility of release." RCW 9.94A.570. The use of "shall" imposes a mandatory requirement unless a contrary legislative intent is apparent. Erection Co. v. Dep't of Labor and Indus., 121 Wn.2d 513, 518, 852 P.2d 288 (1993). Therefore, the POAA requires a life sentence for a persistent offender. This mandatory life sentence under the POAA does not violate the Eighth Amendment of the United States Constitution when imposed on a defendant who committed all three strike offenses as an adult. State v. Witherspoon, 180 Wn.2d 875, 890, 329 P.3d 888 (2014).

Brown committed the assault in this case at 27 years of age. He committed his prior POAA crimes at ages 21 and 22. As an adult persistent offender, Brown's sentence of life without the possibility of early release was mandatory and constitutional. The trial court lacked discretion to deviate from this sentence.

Brown argues his mental and emotional impairments result in a level of developmental maturity equivalent to a child, which the trial court should have considered before imposing the life sentence. The Washington Supreme Court has acknowledged an offender's age has ramifications for the Eighth

11

Amendment, such that criminal procedure laws must take a defendant's youthfulness into account. State v. Houston-Sconiers, 188 Wn.2d 1, 8, 391 P.3d 409 (2017) (quoting Graham v. Florida, 560 U.S. 48, 76, 130 S. Ct. 2011, 176 L.Ed.2d 825 (2010)). As a result, "sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system." Houston-Sconiers, 188 Wn.2d at 21. Brown contends the trial court should have exercised this discretion in his sentencing.

But Brown was not a juvenile when he committed any of his POAA eligible crimes. While Brown claims his mental and intellectual deficits give him "characteristics of youth," he fails to provide case law to support the exercise of discretion in sentencing adults with such disabilities. Given the lack of authority for this position, we decline to extend Houston-Sconiers to the facts of this case.

Affirmed.

_Chun, J._

WE CONCUR:

_Mann, ACJ_                    _Verellen, J._